## GLENNON v. STAR CO.

(Supreme Court, Appellate Division, First Department. February 11, 1909.)

1. MASTER AND SERVANT (§ 101*)—INJURIES TO SERVANT—SAFE PLACE.

A master's duty to furnish a safe place extends to the premises in which the employés are put to work, the machinery supplied for doing the work, and all the appliances provided for their use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 171; Dec. Dig. § 101.*]

2. MASTER AND SERVANT (§ 103*)—INJURIES TO SERVANT—SAFE PLACE.

A master's duty to furnish a safe place and safe appliances cannot be delegated.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*]

3. MASTER AND SERVANT (§ 105*)—SAFE PLACE—CUSTOMS—METHOD OF WORK.

In determining whether a master has been negligent in furnishing a safe place, the method in use in performing the work and customs established by the master and his superintendents are to be considered when, by deviation from that custom, an obstruction or condition is caused which exposes the employés to danger or injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 185; Dec. Dig. § 105.*]

4. MASTER AND SERVANT (§ 121*)—INJURIES TO SERVANT—DANGEROUS PREMISES—NEGLIGENCE.

Decedent, a pressman in defendant's printing establishment, was killed by falling through an open, unguarded hatchway in the floor while passing in the course of his duty to another room to give a signal to other employés to supply his press with paper. The hatch, which was directly in decedent's path, had been constantly kept closed while the presses were in operation, but had been opened on the morning of the accident, while decedent was at breakfast, to permit the reception of coal into the cellar. The hatch had remained unguarded without warning for at least five minutes before the accident. *Held,* that defendant was negligent in failing to provide a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 231; Dec. Dig. § 121.*]

5. MASTER AND SERVANT (§ 235*)—DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE.

Decedent was killed by falling through an open unguarded hatch in the floor of a pressroom through which he was required to go to give a signal to provide his press with more materials. When he went to work on the morning he was killed, the hatch was properly closed and the place safe. When he returned from breakfast, the hatch had remained open and unguarded for more than five minutes, and there was nothing brought to decedent's attention to impose on him the duty of anticipating that the hatch had been opened in his absence. *Held,* that decedent was not negligent, though he did not look to see that the hatch was closed as he proceeded over it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 718; Dec. Dig. § 235.*]

6. MASTER AND SERVANT (§ 231*)—INJURIES TO SERVANT—WARNING.

A servant may rely on the performance of a master's duty not to create a dangerous condition without warning.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 675; Dec. Dig. § 231.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. MASTER AND SERVANT (§ 281*)—DEATH OF SERVANT—CONTRIBUTORY NEGLI-
GENCE—EVIDENCE.
    Where an employé is killed, and is thus unable to explain his action
just prior to the happening of the accident which no one witnessed, the
rule requiring evidence to show affirmatively an absence of contributory
negligence is relaxed, and is satisfied if from all the evidence the jury
would be justified in finding that deceased proceeded with the care re-
quired of him by law; lack of direct testimony that he looked before
encountering the danger not being a bar to his recovery.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 987;
Dec. Dig. § 281.*]
    Houghton and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Michael Glennon, as administrator, etc., of John Glen-
non, deceased, against the Star Company. From a judgment entered
on dismissal of the complaint, plaintiff appeals. Reversed. New trial
ordered.

Argued before PATTERSON, P. J., and INGRAHAM, Mc-
LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Herbert C. Smyth, for appellant.

Frank V. Johnson, for respondent.

INGRAHAM, J. In May, 1902, the defendant occupied the prem-
ises on the northwest corner of Vandewater and Gansevoort streets,
in the city of New York, in which were operated large printing presses
for the printing and publication of its newspapers. In these premises
were two adjoining rooms connected by an archway. In one of these
rooms was a large printing press extending from the floor of the
room up to the floor of the room above. Alongside of this printing
press there was a platform about 7 inches high, about 2 feet 6 inches
wide, and between 5 and 6 inches long. Adjacent to this platform
was a hatchway used for conveying coal to the cellar. This hatch-
way was 2 feet 3½ inches wide. It had been the custom to open
this hatchway to put in coal and take out ashes on Monday afternoon
or on Friday night, when the presses were not running, which had
existed during the time the defendant had occupied the premises or
for two years prior to the accident. This hatchway, when not in use,
was covered by a cover constructed of wood of the same material
of which the floor of the room was made, which was entirely removed
when the hatchway was to be used. There were 4 16-candle power
electric lights on the ceiling of the room alongside of the press, and
the press itself was lighted. These presses were about 20 feet long
and 18 feet high, and extended up to the ceiling of the room. The
deceased was working on a press in the adjoining room. The paper
for these two presses was supplied from the floor above. When
paper was needed, it was the duty of one of the employés to go to
and push a button in the wall behind this press alongside of which
was this hatchway. On the morning of Saturday, the 10th of May,
when the deceased went to work on the press in the adjoining room,
this hatch cover was down, and the premises were in their usual con-
dition. The way from the arched opening from the adjoining room

in which the plaintiff's intestate was engaged at work to the bell used for calling for additional supplies of paper was over this hatchway, although it could be avoided by walking around it. The presses in both rooms were in operation, when, at about 8 o'clock, the deceased went out to breakfast. About the same time a load of coal came for delivery at the premises of the defendant, and the general manager of the defendant directed that the coal should be taken in. After this order was given, the hatch cover was removed and a chute run up a few inches above the floor, to which was to be joined a chute from the wagon in the street, and through which the coal was to be delivered in the cellar. In the meantime the plaintiff's intestate had returned to work at the press in the adjoining room. Needing paper for his press, he walked through the archway connecting the two rooms, and, walking towards the bell, he fell down the hatchway, and sustained the injuries which resulted in his death. No warning was given to any of the employés of the opening of the hatchway. There was no barrier of any kind around it, and at the time of the accident the hatchway was not actually in use, the cover having been removed to connect it with the coal wagon in the street, but it had not been connected. There is no evidence that any one saw the deceased fall into the hatchway. The evidence as to the condition of light in the room is somewhat indefinite. It was not light enough to read a newspaper there, but was light enough to see that the hatchway was open when a person was within three feet of it. The color of the floor and of the hatchway cover was black, and there seems to have been no light in the hatchway from the cellar. One of the pressmen working on the press in this room in which this hatchway existed testified that he saw this hatchway open some five minutes or so before the accident; that he was then working on the platform alongside of the hatchway, but was compelled to stop the press and go to the top of it to make some repairs, and while there the accident happened. The deceased had worked at these presses in these rooms for about two years prior to the accident.

The first question presented is whether there was proof to justify the submission of the question of the defendant's negligence and the plaintiff's intestate's freedom from contributory negligence. Irrespective of the provisions of the building code relied upon by the plaintiff, I think there was evidence to justify the submission of this case to the jury. It is one of the fundamental principles applicable to the relation between employer and employé that the employer is charged with the positive duty of furnishing to his employés a safe and proper place in which they are to do the work required of them. This duty extends to the premises in which the employés are put to work, the machinery supplied for doing the work, and all of the appliances provided for their use. It is a duty that cannot be delegated, but is a positive obligation imposed upon the master, and a neglect to perform it subjects him to liability for the injuries sustained by an employé in consequence of that neglect. In considering whether or not there has been negligence in the performance of this duty, the method that has come into use in performing the work and the customs that

have been established by the master and his superintendents and foremen are material elements to be considered when by a deviation from that custom an obstruction or condition is caused which exposes his employés to danger of injury. It was part of the duty of the deceased to give the signal to an employé upon the floor above to supply the press at which he was working with paper. The master had provided a signal for that purpose, which required the employé operating the press at which the deceased was engaged to walk to the adjoining room and behind a press in operation, and the direct pathway to give this signal lay over a hatchway that had been constantly kept closed while the presses were in operation. To open this hatchway, leaving it unguarded, directly in the path of defendant's employés when engaged in the performance of their duty at a time when, according to the custom established, it was never open but securely covered, placed a pitfall in the way of an employé in the performance of his duty which it seems to me was evidence of a failure by the master in performing the duty of providing a safe place for his employés to work. The danger of a man walking on this floor and falling down such a trapdoor was obvious, and there was created by the direct intervention of the master a condition which exposed his employés to serious injury, and which could easily have been obviated by some barrier or notice which would have prevented such injury. The man in charge of the work directed the hatchway to be opened. The man to whom such orders were given opened the hatchway and went to the cellar leaving it unguarded, and the deceased fell into the open hatchway. There is evidence that this hatchway remained in this condition for at least five minutes before the accident and all of the defendant's employés who were required to use this floor were thus exposed to a danger which was perfectly obvious, and which a prudent man would have apprehended. The creation of this condition was not the act of a fellow workman within the rule that exonerates a master from the negligence of such an employé, but was a failure of the master to see to it that the place in which his employés were required to work was maintained in a reasonably safe condition for them to perform the work that they were required to do. It seems to me that there was thus presented a question as to whether or not the defendant was not guilty of negligence in the performance of this duty.

A more serious question is presented as to whether the evidence justified a finding that the deceased was free from contributory negligence. He came to work at 8 o'clock in the morning, when the trapdoor was properly closed and the place safe. He went to breakfast, was absent 15 or 20 minutes, and while absent this unsafe condition had been created, and he returned to work and was required to walk through this room in which there existed an unsafe and dangerous condition, and was killed as the direct result thereof. There was certainly nothing that had been brought to his attention that imposed upon him the duty of anticipating that the dangerous situation had been created during his absence, nothing that imposed upon him the duty of examining the floor to see if it was safe to walk on, and thus a different situation is presented than where a person approaches a steam

railroad track or is in a position where a prudent man must anticipate danger, and is required to be alert in guarding against it. It is true that there was no evidence that he looked to see if a hole had been created in his absence which would endanger his life; but there certainly was no rule of law which required him to examine the floor for such a purpose. The custom which had existed as to the time in which this hatchway should be in use has material bearing upon the question of his duty to inspect the floor to see that the cover of the hatchway had not been removed. He also had a right to rely upon the performance of the duty imposed by law upon the master not to create a condition of danger to his employés without some warning. Considering all the circumstances and the rule that where an employé is killed, and is thus unable to explain his action just prior to the happening of the accident, which no one witnessed, the rule requiring evidence to show affirmatively that there was no contributory negligence is much relaxed, and, if from all the evidence the jury are justified in finding that the deceased did proceed with the care required of him by law, the lack of direct testimony that he did look is not a bar to his recovery. Thus from the whole case I am satisfied that there was evidence both as to the defendant's negligence and the freedom of the deceased from contributory negligence which required that this case should have been submitted to the jury.

The judgment appealed from should therefore be reversed and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and CLARKE, J., concur.

HOUGHTON, J., dissents on the ground that no negligence on the part of the defendant was proven.

McLAUGHLIN, J. (dissenting). The evidence does not justify a finding that the intestate was free from contributory negligence. He may have been, but this is a guess, a mere conjecture, and I cannot therefore vote to reverse this judgment. I dissent.