PATRICK DOWDELL, Appellant, *v.* LACKAWANNA STEEL COMPANY, Respondent.

**Master and servant** — injury to employee by falling of crane while used for lifting heavy casting — master, who furnished appliances for securing crane, not liable because foreman failed to use them.

Plaintiff was injured while engaged in operating a locomotive crane which was in use in lifting a weight of from four to six tons. The crane was furnished with outriggers to counterbalance the weight of heavy castings that were being moved by it and also by a clamp that could be secured to the rail, thereby holding the car in an upright position in order to prevent it from capsizing when lifting a heavy weight. The person in charge failed to attach the clamp to the rail

and the crane capsized while swinging around and plaintiff was caught under the wreckage. The complaint was at common law and was dismissed on the ground that the operation of the crane was a detail of the work. *Held,* that the master, having furnished the crew with appliances that would prevent the capsizing of the car, if prudently and seasonably used, discharged his full duty in the premises. (*Cullen* v. *Norton,* 126 N. Y. 1, followed.)

*Dowdell* v. *Lackawanna Steel Co.,* 129 App. Div. 937, affirmed.

(Argued April 8, 1910; decided April 26, 1910.)

Appeal, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 16, 1909, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

This action has been twice tried. At the first trial the plaintiff recovered a verdict of $9,500.00. A second trial was had where the record of the first trial was read in evidence and some further facts proved, resulting in a directed verdict in favor of the defendant of no cause of action, which was affirmed by the Appellate Division, all the justices concurring. This appeal is taken by permission of a judge of this court.

The complaint alleges that the plaintiff while in the employ of the defendant and in the use of due care, was crushed by the tipping over of a locomotive crane, owned and operated by the defendant; that the fall of the locomotive crane was caused solely by the negligence of the defendant in failing to place reasonably competent men in charge thereof, and in failing to make, promulgate and enforce reasonable rules by which the men were to be governed while operating the same, but that defendant permitted the locomotive crane to be operated in a dangerous manner; that defendant carelessly failed to keep the track upon which the crane was operated in a reasonably safe condition therefor.

The answer alleged that the plaintiff, Patrick Dowdell, had actual notice and knowledge of the position and operation of the locomotive crane referred to in the complaint herein, and

was entirely familiar with the mental and physical qualifications, judgment and experience of the men in charge of the locomotive crane and his fellow-servants with whom he was working at the time of the accident; that plaintiff had actual notice and knowledge of the methods of operating the crane, and of the manner in which it was operated upon the track referred to in the complaint; that the plaintiff knew the condition of the place in which he was at work and the condition of the track, roadbed and foundation upon which the crane was operated at the time of the accident and for a long time prior thereto; that plaintiff knew the danger and risk arising from the operation of the crane, and for a long time prior to said accident had actual notice of the methods of its operation, and thereby he assumed the risk arising from the operation and handling of the crane, and was injured by reason of his own negligence and carelessness and without any negligence or want of care on the part of the defendant.

A demand was made upon the plaintiff for a bill of particulars, which was furnished and added somewhat to the details set forth in the complaint. Among other things it was stated that the defendant should have made, promulgated and enforced a rule requiring the locomotive crane to be clamped to the track before operating it; also, that the failure to clamp the crane to the track was dangerous and not the usual and recognized manner of doing such work; also, that the track was sidling, the roadbed slanting, soft, and the ties not laid upon the proper foundation or properly ballasted, and not in proper condition for the heavy work for which the track was used.

*Thomas A. Sullivan* and *Frederick G. Bagley* for appellant. The crane overturned solely because of the negligence of the defendant. (*Hoelten* v. *McDonald*, 82 App. Div. 423; *Devoe* v. *N. Y. C. & H. R. R. R. Co.*, 174 N. Y. 70; *Sullivan* v. *M. R. Co.*, 53 App. Div. 89; 170 N. Y. 570.)

*Evan Hollister* for respondent The tipping over of the derrick car resulted from the negligence of the plaintiff's fellow-

servants in failing to anchor it to the track, which was the proximate cause of the accident, for which the defendant is not liable. (*Wagner* v. *N. Y. C. & S. L. R. R. Co.,* 76 App. Div. 552; *McQueen* v. *D., L. & W. R. R. Co.,* 102 App. Div. 195; *Wheeler* v. *Norton,* 92 App. Div. 268; *Laidlaw* v. *Sage,* 158 N. Y. 73; *M. & S. P. R. Co.* v. *Kellogg,* 94 U. S. 469.) There is no evidence in the record of any negligence on the part of the defendant. (*Ludlow* v. *G. B. Co.,* 11 App. Div. 452; *Brown* v. *Terry,* 67 App. Div. 223; *Koszlowski* v. *A. L. Co.,* 97 App. Div. 40.)

EDWARD T. BARTLETT, J. The scene of the accident where the plaintiff received his injuries, for which he seeks to recover damages in this action, was at the defendant's steel plant, near the city of Buffalo, at West Seneca, on October 23rd, 1902. The plaintiff, while assisting in operating a device known as a "locomotive crane," was injured by its capsizing and falling upon him.

A proper appreciation of the situation requires a brief description of the device known as a locomotive crane. A witness for the plaintiff was permitted to read from the manufacturer's circular a description of this crane: "The frame work of this car is twenty-four feet, one and one-half inches long; with nine feet, four inches, constructed of steel. * * * In working order the crane weighs approximately seventy-five tons, distributed over a wheel base of sixteen feet."

It further appears that upon the deck of this car is a cabin in which were an engine and machinery for operating a steel jib or boom. This cabin rotated on a circle so that the boom could pick up material on either side of the track. The boom was so arranged that it could be lifted from a horizontal to a vertical position by cable and pulley, and in that way its radius could be lengthened or shortened as circumstances might require in unloading or picking up castings or other heavy articles for transportation. The car was also equipped with outriggers to strengthen it when making heavy lifts,

acting as a counterbalance.  The car was also provided with
a device known as a "clamp," which was designed to grasp
the rail and hold the car in an upright position on the track
when lifting heavy steel castings.

On the day of the accident, October 23rd, 1902, the plain-
tiff was engaged in operating this locomotive crane with a
number of other men, his place being under the assistant
foreman.   It appears that he had been working in this posi-
tion from the tenth of the previous September.   It also
appears that the defendant steel company was engaged at
this time in the erection of its very extensive plant, and
among other work it was building what is known as the
"Bessemer Steel Mill," a structure three hundred and fifty
feet in length.   The track upon which the crane was run was
of a temporary character, as were all the tracks on the prop-
erty of the defendant, where at this particular time the work
of construction was very general.   The track on which the
crane was operated on the day in question ran parallel with
the side of the Bessemer steel mill and a sufficient distance
therefrom to enable it to deliver at the main door various
castings and heavy articles of steel.

At the time of the accident the crane crew were engaged
in delivering what was known as a "steel bedplate" that
weighed somewhere from four to six tons.   Immediately
before the accident the plaintiff had been engaged with other
men in putting down planks at the point of the proposed
delivery of this casting to receive the same.   When the crane
approached opposite this point of delivery the men retired
hastily in order to be in a place of safety when the casting
was lowered.   A witness who was engaged in operating the
crane at this particular time said : "When we got to this
place where the accident occurred the crane was stopped.   I
got orders to swing the crane, that is swing the casting over
to the left.   That would be between the building   *   *   *
and the track on which the crane was operated.   *   *   *   In
swinging it around the crane naturally moved slowly.   While
I was swinging it around the crane capsized.   The crane and

1910.]    Dowdell *v.* Lackawanna Steel Co.    367

N. Y. Rep.]    Opinion of the Court, per Edward T. Bartlett, J.

the casting had reached an angle of about forty-five degrees with the car when it capsized."

The plaintiff was caught under a certain portion of the wreckage and thereby received the injuries for which he sues.

This is a common-law action, and the plaintiff insists that the defendant is liable to respond in damages for the reason that it failed to place competent men in charge of the locomotive crane; also in failing to promulgate proper rules by which the men were to be governed while operating the crane; also that the defendant failed to make and keep the track upon which the crane was operated in a reasonably safe condition. It was proved that the rail of the track nearest the building in course of construction was from two to five inches lower than the other rail.

The dismissal of the complaint on the last trial was based upon the legal proposition that the operation of this crane was a detail of the work, and that for any injuries received by the workmen accustomed to operate the same the master was not liable.

It was clearly proved that the employees engaged in operating this obviously dangerous device were furnished with outriggers to counterbalance the weight of heavy castings that were being moved by the crane, and also by a clamp that could be secured to the rail, thereby holding the car in an upright position. James Connery, a witness sworn on behalf of the defendant, testified that he was operating the crane at the time of the accident. Under cross-examination he stated as follows: "When I speak about outriggers, I mean by that there were four I-beams, two on each end of the car. They were the length of the car and operated on rollers. * * * Their height is about four inches, with a flange on top and a flange on the bottom. They roll out of the bottom or come from rollers out of sheaths that are on the ends of the car. There are outriggers on both ends of the car. It was their purpose in making a heavy lift to strengthen the crane; in other words, you put the outriggers out and block them up; then the crane can't tip over, not very well."

The use of these I-beams was fully explained to the effect that heavy blocks or weights were placed thereon, adding greatly to the stiffness or stability of the car. This device in connection with the clamp already described were furnished to the crew of the car in order to prevent it from capsizing when lifting a very heavy weight. It clearly appears that the crew operating this crane were engaged in passing from one part of the defendant's plant to another, and their duties were manifestly a detail of the work, and the master having furnished them with appliances that would prevent the capsizing of the car, if prudently and seasonably used, has discharged his full duty in the premises. If the weight was great, or the track uneven, or the soil beneath the track in any degree soft or yielding, it was for the operators of the crane to determine when to use these safety devices. It was proved that just prior to the accident there was a discussion between certain members of the crew as to the propriety of attaching the clamp to the rail, but it was determined by the conductor, or some one in authority, that it was unnecessary.

The master is bound to furnish reasonably safe implements for the use of his servants, and a reasonably safe place of employment, considering the nature of the employment itself. (*Cullen* v. *Norton*, 126 N. Y. 1, 5.) In the case at bar the reasonably safe place of employment, considering the nature of the employment itself, was on and about the crane, and to use the manifestly efficient devices provided for the safety of the crew. The failure to do so, followed by an accident killing or injuring one or more of the crew, is a result for which the master cannot be held liable.

The judgment appealed from should be affirmed, with costs.

Gray, Werner, Willard Bartlett, Hiscock and Chase, JJ., concur; Cullen, Ch. J., dissents.

Judgment affirmed.