Michael Blosky, Appellant, *v.* Overseas Shipping Co., Inc., Respondent.

First Department, February 18, 1927.

Ships and shipping — action by longshoreman who was injured while unloading covered barge — work was under direction of foreman — during forenoon of day of accident boxes were loaded on skid directly under opening in roof — in afternoon, skid was placed away from opening and it was necessary to swing it under opening and then raise it — court submitted question whether change of method was mere detail of work — verdict in favor of plaintiff was set aside on ground that change of method was mere detail — submission to jury was insufficient to enable jury intelligently to pass on question — if change of method caused place to be unsafe or if foreman should have made rule that audible signal be given to winchman and that laborers should guide skid, then defendant would be liable — plaintiff was rendering maritime service and is within Federal statute known as Jones Act.

In an action by a longshoreman to recover damages for personal injuries suffered while at work unloading boxes of tin from a covered barge into the hold of a vessel, the method of work during the forenoon of the day of the accident was to load the skid directly under the opening in the roof and raise it from that position. In the afternoon, shortly before the accident occurred, the foreman directed that the skid be placed away from the opening and close to the boxes of tin. This required the dragging or swinging of the skid until it came under the opening, and then raising it. The space in which the work was being done was very limited. The first two loads, after the change of method, were guided by the workmen until they came under the opening, but the load which injured the plaintiff was not guided, and the signal given to the winchman was given by a motion of the hand, so that the plaintiff, who stood with his back toward the skid, did not know that the load was about to be raised. The court submitted to the jury the question as to whether the change in the method of work was a mere detail on the theory that if it were, then the defendant would not be liable, and after the jury had rendered a verdict in favor of the plaintiff, the court set it aside on the ground that the change of method was a mere detail of the work.

The action was tried under the rules of the common law and the defendant was under a non-delegable duty to provide his servants with a safe place in which to work.

Under the facts attending the accident, whether or not the orders of the foreman related to a mere detail of the work, or were such that the place of work which had been a safe place before was rendered unsafe, was a question of fact for the jury.

The submission by the court did not constitute an adequate presentation to the jury of the issues involved. The jury should have been asked to determine whether the change in method rendered the place of work unsafe, provided they found that the change was permanent, whether the facts did not require the foreman to make rules requiring the giving of an audible signal to the winchman when the skid was about to be raised, and whether or not reasonable precaution required a rule that each skid should be guided by two laborers

until it came beneath the opening of the roof. If the adoption of these pre-cautions were reasonably necessary, the defendant is liable.

While the action was tried as one at common law, and no question was raised as to the applicability of section 33 of chapter 250 of the act of Congress of June 5, 1920, known as the Jones Act, a recent decision by the United States Supreme Court shows that said act is applicable, for the plaintiff was engaged at the time of the accident in a strictly maritime service. Therefore, the rule is applicable that when a seaman or stevedore is injured while rendering a strictly maritime service, he may sue in a State court and claim the benefits of the act of Congress, which has taken away the defenses of assumption of risk and the fellow-servant rule and has substituted, in place of the defense of contributory negligence, the rule of apportionment of damages based upon comparative negligence.

APPEAL by the plaintiff, Michael Blosky, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 19th day of March, 1926, granting defendant's motion to set aside the verdict and for a new trial.

*Harold R. Medina* of counsel [*Joseph Levy* with him on the brief; *Levy & Becker*, attorneys], for the appellant.

*Everett W. Bovard* of counsel [*Clarence E. Mellen* with him on the brief; *Norman G. Hewitt*, attorney], for the respondent.

FINCH, J. The plaintiff recovered a verdict against the defendant for damages for personal injuries suffered while working in the employ of the defendant as a longshoreman. The theory of the plaintiff's action upon the trial was that the defendant, through its foreman in charge of the work, changed the method of doing the work.

The plaintiff and six other men were engaged in unloading boxes of tin from a covered barge into the hold of a vessel alongside while moored at a pier in the East river, port of New York. The entire work was under the direction of a foreman named Kiplock. During the forenoon the method of work was to place a wooden skid upon a raised platform running through the center of the barge, and on this skid to pile the boxes of tin. When the skid was loaded it was hoisted vertically by a boom and fall out of the barge through an opening in the roof directly over the platform. The plaintiff's evidence showed this to be the method customarily employed. When the men returned from lunch they commenced to unload a new section or compartment by precisely the same method as they had emptied a compartment during the morning. Upon opening the door they found the boxes of tin plate piled up inside to a point about three feet away from the door. Twenty-five minutes after the men had started to work in the afternoon, Kiplock came upon the roof of the barge and looked down through the opening to

First Department, February, 1927.          [Vol. 219

where the plaintiff and the other members of the gang were working. It is a fair inference that he felt that the unloading was not proceeding at a sufficiently rapid pace. He thereupon gave an order to " take the skid and put it right by the goods and drag it." In other words, the men were instructed to place the skid not on the runway directly beneath the opening in the roof, but to drag it in under the roof and place it directly alongside of the boxes of tin so that they might be lifted from their place in the pile and placed on the skid without consuming the time of manually carrying the boxes of tin plate from their place in the pile over to the skid on the runway. After the skid was loaded with several tons of tin plate it was then to be hooked to the boom and dragged or swung out from under the roof towards the runway and hoisted through the hole in the roof of the barge. This obviously comprised two different directions in which the loaded skid would swing, namely, horizontally and vertically. The runway itself was about six feet in width. The space which had been cleared up to the time of the accident was so narrow and confined that a witness testified that he and his partner were standing not yet loading their empty skid because there was not sufficient room for all of the six men to be working there at once. As the space which had already been cleared was only seven to ten square feet, and as the skid was five and one-half feet long, it is evident that there was very little room within which the skid could be swung without filling the whole of the space cleared. It is, therefore, a fair inference that the men had small chance of escaping the swinging skid. In fact, one of the men testified that he sought to protect himself by climbing upon the boxes of tin to get out of the way of the draft. Following the instructions given by Kiplock, only two loaded skids were successfully lifted out of the lighter when the third skid hit the plaintiff, causing the injuries complained of. The plaintiff was working, loading a skid with his back to the skid which was being pulled out. The two skids which had been successfully taken out after the new method of doing the work had been adopted, were guided by the two men who had loaded the same. The loaded skid which struck the plaintiff was unguided, however. Also, there was no audible signal given by the seventh man of the gang to the winchman, but the signal to drag the skid was given by means of a motion of the hand. The plaintiff, therefore, had no warning that any signal to swing the skid was being given. As the skid in question was swung or dragged horizontally, the edge of the skid hit the side of the runway, causing the skid to change its direction and smash the plaintiff between it and the skid which he was loading.

The learned trial court left to the jury one question, namely: "Whether the change in the method that was adopted that morning and the method that was adopted in the afternoon was a mere detail of the work or not." The jury found in favor of the plaintiff in the sum of $12,000. The trial court thereupon set aside the verdict on the ground that the directions of the foreman related to a mere detail in the performance of the work and, if these directions were negligent, the defendant was not liable as a matter of law. The complaint was not dismissed, however, but a new trial was granted.

The cause was tried under the rules of the common law. The master was thus under a non-delegable duty to provide his servants with a safe place to work. In *Glennon* v. *Star Co.* (130 App. Div. 491; affd., 197 N. Y. 597) Mr. Justice INGRAHAM, speaking for the court, said: "It is one of the fundamental principles applicable to the relation between employer and employee that the employer is charged with the positive duty of furnishing to his employees a safe and proper place in which they are to do the work required of them. This duty extends to the premises in which the employees are put to work; the machinery supplied for doing the work and all of the appliances provided for their use. It is a duty that cannot be delegated, but is a positive obligation imposed upon the master, and a neglect to perform it subjects him to liability for the injuries sustained by an employee in consequence of that neglect." Whether under the facts and circumstances of this case and the fair inferences from the facts, the orders of the foreman related to a mere detail of the work or were such that the place of work which had been a safe place was thereby rendered unsafe, presented a question of fact for the jury.

As noted, such submission was made by the learned trial court, but only by asking the jury whether the change in the method of work was a mere detail of the work or not. A jury is not generally familiar with legal nomenclature and their attention should have been plainly and adequately called to the character of the questions which they must decide. The jury should have been asked to determine whether the order of Kiplock rendered the place of work unsafe, provided they found that this order permanently changed the method of work. Also whether the facts and circumstances did not require the defendant, through its foreman, to promulgate rules and regulations requiring the seventh man to give an audible signal to the winchman, thereby affording to the men some warning of the dragging and swinging of the skids. Also whether a rule was not required compelling the two laborers who had loaded each skid to guide the same until it came beneath the opening of the

roof. If the adoption of these precautions was reasonably necessary for the safety of the workmen in that place, the foreman was in this respect the *alter ego* of the master and a failure to adopt these methods would make the master liable.

In *Dzkowski* v. *Reynoldsville Carting Co.* (216 N. Y. 173) the plaintiff was engaged in hooking coal buckets to a cable. The space was small and a motion of the boat caused plaintiff to catch hold of one of the rails upon which the derrick ran. The plaintiff was working with his back to the derrick and there was a question whether the defendant should not have promulgated a rule requiring a signal to be given. He was injured from the derrick running over his hand, and the Court of Appeals unanimously held: " The evidence presented a question of fact for the jury whether the defendant was negligent in failing to promulgate rules and regulations requiring its employees to give a signal or warning of some kind on the approach of the derrick."

In *Biondolillo* v. *Erie R. R. Co.* (215 N. Y. 330) an employee of the defendant, in charge of a gravel pit, directed another employee to remove a rock, which had fallen five feet from a train, so that the train might be moved. The accident happened by the train moving without an audible signal having been given, and the court held that the defendant, through another employee, should have promulgated a rule requiring an audible signal to have been given before moving the train.

In our view of the case at bar the submission to the jury by the learned court of the question whether the aforesaid order of Kiplock was a detail of the work or not, did not constitute an adequate presentation to the jury of the issues involved, and, therefore, the order setting aside the verdict and granting a new trial should be affirmed.

Upon the trial of the case at bar no question was raised as to the applicability of section 33 of chapter 250 of the act of Congress of June 5, 1920, known as the Jones Act (41 U. S. Stat. at Large, 1007). This act has eliminated as a defense the fellow-servant rule and the assumption of risk rule and has substituted in place of the defense of contributory negligence the rule of apportionment of damage based upon comparative negligence. At the time of the trial of the case at bar the Court of Appeals of New York had held that the Jones Act was applicable to a trial in the State court (*Patrone* v. *Howlett,* 237 N. Y. 394), but the Supreme Court of the United States had not passed upon the question. In considering the Jones Act, the Court of Appeals of New York, speaking through Judge POUND, said: " The question is as yet unsettled by a decision of the United States Supreme Court as to whether the State courts have juris-

diction of an action under the act of Congress." (*Patrone* v. *Howlett, supra.*)

Since the trial of the case at bar and on October 18, 1926, the Supreme Court of the United States decided that an action brought in a State court seeking a common-law remedy for personal injuries sustained by a plaintiff, who was a longshoreman working upon a vessel at dock in the harbor of Seattle, engaged in stowing freight in the hold, was within the operation of the act of Congress of June 5, 1920, chapter 250. In that action, through the negligence of the hatchtender, no warning was given that a load of freight was about to be lowered and in consequence the plaintiff was badly hurt. The trial court denied a ruling asked for by the defendant that the plaintiff and the hatchtender were fellow-servants and, therefore, the plaintiff could not recover. The court ruled instead that if the failure of the hatchtender to give a signal was the proximate cause of the injury, the verdict must be for the plaintiff. A judgment entered upon a verdict for the plaintiff was affirmed by the Supreme Court of the State. (*Haverty* v. *International Stevedoring Co.*, 134 Wash. 235.) On writ of certiorari, the United States Supreme Court affirmed upon the ground that the plaintiff was engaged in a maritime service formerly rendered by the ship's crew and that in the Jones Act the word " seaman " included stevedores engaged as was the plaintiff. (*International Stevedoring Co.* v. *Haverty*, 272 U. S. 50.)

Both parties in their briefs treat the plaintiff as rendering a strictly maritime service, but since the cause was tried under the rules of the common law the character of such service did not become a material issue.

So far as this record goes, the plaintiff appears to have been rendering a strictly maritime service which relates to the general maritime law as distinguished from matters of mere local concern (*Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52; *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 id. 469), and, therefore, the rule is applicable that when a seaman or stevedore is injured while rendering a strictly maritime service, he may sue in a State court and claim the benefits of the act of Congress known as the Jones Act, which takes away the defenses as indicated.

It follows that the order appealed from should be affirmed, with costs.

DOWLING, P. J., McAVOY, MARTIN and O'MALLEY, JJ., concur

Order affirmed, with costs.