Heffernan, J. P.
(dissenting). Appellant, Williams, was the owner of farm lands used principally for the cultivation of fruit, in Ulster County, New York. Appellant, Paterno, was a tenant or lessee of the lands in question and had the exclusive management and control thereof. Respondent was an employee of the appellant, Paterno, as a laborer, on the premises in question.
During the month of April, 1941, Williams entered into a contract with Paterno whereby Paterno agreed to work the farm and to spray all fruit trees thereon, to cultivate the currants, to harvest and market all crops of fruit, to supply all materials for spraying and to furnish all necessary labor to market the produce on the farm. Paterno agreed on his part to pay to Williams a certain amount of money for all crops raised on the farm. Williams was the owner of a power tractor and sprayer with shafts, rods and connections whereby power was transmitted from the tractor to the sprayer for use by Paterno and his employees in the operation of the farm and in spraying trees and shrubbery thereon.
The machinery and equipment involved were not a single unit but consisted of two separate parts, i. e., a Friend spray and a McCormick-Deering crawler type tractor. The shaft of the sprayer was about four feet from the ground. The power takeoff shaft at the tractor was about eighteen inches above the ground. The spray machine consisted of a spray tank and pump mounted on four wheels and included a draw bar by which the spray machine was intended to be towed and the power shafts with universal joints at each end intended for the transmission of power to the sprayer from any motor tractor appropriate for that purpose. The draw bar by which the spray machine was drawn or towed by the tractor was about four feet in length and about three or four inches wide and was attached end to end to the back of the tractor and the sprayer at their centers at a height variously described at twelve, thirteen or fourteen inches above the ground at both the tractor and sprayer ends. The drive shaft was about three or four feet in length and was made in two sections of different dimensions, the larger being hollow and the smaller being solid and sliding into the larger. The power take-off on the tractor was a shaft which projected from the housing of the tractor to which the coupling of the universal at one end of the drive shaft was attached. This power take-off was at the back of the tractor and at a height of about eighteen or nineteen inches above *499 the ground and about five or six inches above the drawbar underneath.
The universal at the tractor end of the drive shaft was attached to the power-take off shaft of the tractor by a collar or sleeve which embraced the take-off shaft and which was intended to be fastened thereto by a bolt passing through a hole in the collar and shaft. This bolt was secured by a nut and the position of the bolt and nut was three, four or five inches from the back of the tractor. This bolt could be put in or taken out in connecting or disconnecting the spray unit from the tractor.
Williams furnished all this machinery to Paterno for the purpose of spraying the fruit farm. The contract between Williams and Paterno was continued during the year 1942.
Respondent had been employed by Paterno for the first time in the fall of 1940 as an apple picker. He was likewise employed doing similar work in 1941. In 1942, respondent was directed by his employer to assist in the spraying of fruit.
Respondent had no duties with reference to the tractor or the machinery. A man named Smith, the superintendent of Paterno, was in charge of this work. Respondent’s duty was to handle one of the two sets of hose with the nozzle and the spray gun at the end. On May 12, 1942, respondent was helping with the spraying and was working under the direction of Smith. Smith was driving the machinery and respondent and another man were spraying with a hose and nozzle, one on each side of the sprayer. The pieces of hose were each about forty or fifty feet long with the spray gun at the end. Respondent and his colaborer were located forty or fifty feet behind the sprayer, each spraying trees on the opposite sides of the sprayer. It was a stormy day and when respondent reached a position about opposite the tractor there were some trees which apparently he was not spraying to the satisfaction of the man in charge. The latter jumped off the tractor, took the nozzle away from respondent, and as the spray was being blown back over the tractor seat, he directed respondent to cover the same, and as respondent attempted to pull the canvas over the seat, he was caught by the universal and the take-off and, as he described it, something “ caught in my pants * * * and I was throwed right over, over the shaft, and my clothes wrapped around the shaft.” The evidence discloses that while trying to cover the seat, respondent was caught by the universal and the take-off and whipped around the shaft. The back of the tractor is about thirty-six inches wide and the seat extends across the entire back, and *500 when the space occupied by the drawbar and universal are accounted for, there are about sixteen inches on each side of the drawbar at the back of the tractor. The proof discloses that the machinery in question was wholly unguarded. The proof also discloses that the projecting bolt, attaching the universal to the power take-off, projected through the nut to the extent of about one and one-half inches at the time of the accident. Respondent testified that he observed this bolt a day or two before and that on the very day before the accident Paterno had inspected this bolt. At that time he informed respondent, so respondent testified, that he, Paterno, had meant to fix the bolt but had not found time to do so. Several days before the accident, the testimony shows that the attention of both appellants was called to the excessive length of the bolt at the take-off shaft. Appellant, Williams, at that time tightened this nut with a wrench and while doing so he informed appellant, Paterno, that the long bolt would have to be changed, “ before somebody got hurt on it ”. This particular bolt and nut in conjunction with the revolving mechanism if unguarded obviously were extremely and inherently dangerous. An expert who testified on behalf of respondent said the machinery could have been and should have been guarded. The evidence is clear that the universal at the take-off was recognized as a source of danger and that guards for the protection of persons working in the immediate vicinity thereof were not only practicable but were absolutely necessary.
Not only is it conceded that Williams was the owner of this machinery but on his own testimony he had control thereof while in the possession of Paterno. He testified that he could use them whenever he so desired. In other words, appellant, Paterno, was merely permitted to use this machinery during the spraying operation.
It is not denied that respondent was seriously and permanently injured on the occasion in question. After trial he recovered a judgment against both appellants and from that judgment and from orders denying their motion to set aside the verdict of the jury, appellants have come to this court.
In view of the fact that the verdict of the jury was in respondent’s favor against both appellants, the former is entitled on this appeal to the most favorable view of the evidence including the most favorable inferences that can be drawn therefrom.
Paterno was the employer of respondent. It was his duty to provide the latter a reasonably safe place for the performance *501 of his work (Dowdell v. Lackawanna Steel Co., 198 N. Y. 362; Maleeny v. Standard Shipbuilding Corp., 237 N. Y. 250), and this duty cannot be delegated (Yaconi v. Brady & Gioe, 246 N. Y. 300, certiorari denied 276 U. S. 636; Glennon v. Star Co., 130 App. Div. 491, affd. 197 N. Y. 597).
The defect in this machinery had been specifically brought to Paterno’s attention and in the exercise of reasonable care, it was his duty to take measures to safeguard those lawfully using it.
It is the duty of the employer to see that the place at which the employee is to work is reasonably safe and to furnish the latter with suitable tools and safe instrumentalities with which to do the work. The employer does not relieve himself from liability to his employee by merely furnishing suitable tools, machinery and appliances. He is bound to see that his instrumentalities are maintained in a safe condition. The duty of the employer to maintain a safe place in which employees are to work carries with it the duty to inspect and test, or to have inspected or tested, the place where his employees work and the tools, machinery and appliances with which their labor is performed, and this duty may not be delegated (Mautsewich v. United States Gypsum Co., 217 N. Y. 593).
Appellants argue that respondent was guilty of contributory negligence as a matter of law. In determining this question, consideration must be given to the fact that respondent was acting in an emergency at the direction of his superior. His conduct in such circumstances is not to be judged by the same standard as that which is applicable where the actor has time for reflection and choice of means. In such a situation a recovery may be had by the injured person although if an emergency had not existed a right to recover would be denied (Ward v. F. R. A. Operating Corp., 265 N. Y. 303). It is usually a question of fact for the jury to determine whether or not an injury was caused by mere error of judgment in an emergency or by a negligent act creating the emergency (Raolaslovic v. New York Central R. R. Co., 245 N. Y. 91).
The liability of Williams is predicated upon the fact that by his contract with Paterno he assumed the duty of furnishing machinery and equipment that were free from defects in their use by Paterno’s employees. If the equipment furnished by Williams were dangerous and defective then he is liable for any injuries sustained in consequence thereof by Paterno’s employees (Priolo v. Southard Wrecking & Trucking Co., 198 N. Y. 528). The rule is well settled that one who furnishes a *502 dangerous and defective device with knowledge of the use to which it is to he put and that others than his cocontracting party are to use it, is liable to such third person for injuries sustained by him in the use and operation thereof (MacPherson v. Buick Motor Co., 217 N. Y. 382). The principle of the MacPherson case (supra) is no longer limited to manufacturers but has been extended to suppliers as well, a designation which also covers owners and lessors (La Rocca v. Farrington, 301 N. Y. 247).
Restatement of the Law of Torts (§ 388). That section provides that:
“ One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
“ (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;
“ (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and
“ (e) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.”
The relationship between Williams and Paterno was that of owner and contractor and under such circumstances, Williams would owe the same duty to respondent, an employee of the contractor, as he would to his own employees (Hess v. Bernheimer & Schwartz Pilsener Brewing Co., 219 N. Y. 415).
It cannot be doubted from the proof in this record that the proximate cause of respondent’s injuries was due entirely to the dangerous, defective and unguarded machinery or so a jury might have found. By the same process of reasoning the jury might also have found that respondent was free from contributory negligence as a matter of law.
The judgment and orders appealed from should be affirmed, with costs to respondent.
Brewster and Coon, JJ., concur with Deyo, J.; Heffernan, J. P., dissents, in an opinion, in which Bergan, J., concurs.
Judgment and orders reversed, on the law, and the complaint dismissed, without costs. The facts implicit in the judgment are affirmed.